UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LADS NETWORK SOLUTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:19-cv-00011-AGF |
| | ) | |
| AGILIS SYSTEMS, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER

This matter comes before the Court on the motion of Defendants Agilis Systems, LLC ("Agilis LLC") and Gilead Group, LLC ("Gilead") for leave to file a third party complaint. ECF No. 27. Plaintiff LADS Network Solutions, Inc. ("LADS") opposes the motion. ECF No. 28, 37. For the reasons set forth below, Defendants' motion will be denied.

## BACKGROUND

The pleadings filed in this copyright infringement lawsuit allege the following facts. LADS is a provider of dispatching software, wireless data communications, and mobile GPS-based software solutions, and it is the owner of a registered copyright concerning logistic software ("Copyrighted Software"). LADS alleges in its complaint that in 2004, it entered into a bilateral intellectual property transfer and license agreement with Siliga Systems, Inc. ("Siliga")[1] for use of the Copyrighted Software. LADS alleges

---

[1] Siliga was formed in 2004. ECF No. 33-1 at ¶ 55. It was formerly known as Agilis Systems, Inc., which appears to be a separate entity from Defendant Agilis LLC.

that it entered into subsequent licensing agreements with Siliga for Siliga's use of the Copyrighted Software in 2006 and 2007.

LADS alleges that in October 2007, without the permission or consent of LADS, Siliga assigned its rights under the license agreement to Agilis LLC. Thereafter, Agilis LLC used the Logistic Software without license or authorization. Then, LADS alleges that in July 2017, Gilead created Defendant Archlogix, LLC ("Archlogix"), which began using the Logistic Software without license or authorization. Plaintiff asserts copyright infringement (Count I) against Agilis and Archlogix and seeks to pierce the corporate veil of all Defendants (Count II).[2]

On February 5, 2019, Defendants filed a counterclaim for breach of contract, asserting that LADS is barred from asserting copyright infringement claims against them under the terms of a July 9, 2014 Settlement Agreement, which Defendants allege was signed by Daniel Huber ("Huber"), the "President, Chief Executive Officer, and majority owner of LADS."[3] ECF No. 16 at ¶ 6. That Settlement Agreement was signed in the context of a state court action filed by Huber for his wrongful termination for cause from Agilis, Inc., where he had been serving as Chief Executive Officer.[4] The terms of the Settlement Agreement include a provision waiving, on behalf of LADS, all claims against

---

[2] The factual allegations underlying Count II are complex and reveal the degree to which Defendants are intertwined. However, because they are not determinative of the issues presently before the Court, the Court will not detail those allegations here.

[3] LADS, in its opposition brief, states that Huber "is not the sole owner, but is instead a minority shareholder" of LADS. ECF No. 33 at 4 n. 2.

[4] From the pleadings, it appears to the Court that prior to his termination, Huber held simultaneously held positions with LADS and Agilis, Inc.

Agilis LLC and Gilead, including intellectual property claims. Defendants argue that LADS is violating the terms of that Settlement Agreement by filing this copyright infringement lawsuit. Specifically, Defendants allege that "The Settlement Agreement is a valid and enforceable contract" and that pursuant to the terms of that agreement, LADS "waived, released, and renounced any and all claims, including any purported Intellectual Property claims and/or royalty claims." *Id.* at ¶¶ 31-32. Defendants also assert a breach of contract claim related to the November 1, 2007 license agreement entered into by the parties, as well as an abuse of process claim.

On February 21, 2019, LADS filed its answer and affirmative defenses to Defendants' counterclaim. ECF No. 21. Relevant to this motion for leave to file a third amended complaint, LADS maintains that it was not a party to the Settlement Agreement, and thus cannot be held to its terms. *See, e.g.,* ECF No. 21 at ¶ 18.

Now, Defendants seek leave to file a third party complaint against Huber for breach of contract, breach of implied covenant of good faith and fair dealing, and detrimental reliance, based on his execution of the Settlement Agreement and affirmative representations that he was the agent of LADS and that the Settlement Agreement would be binding on LADS. ECF No. 27-1. Defendants contend that if the Court determines that LADS is not bound by the Settlement Agreement, Huber should be held liable for his contractual promises.

LADS opposes Defendants' request to file a third party complaint, arguing that Defendants' state law claims concerning the Settlement Agreement are not part of the same case or controversy as LADS's infringement claims and assert issues of state law.

Further, LADS maintains that a Missouri state court has already determined that LADS is not bound by the Settlement Agreement. Specifically, in another unrelated state court lawsuit filed by LADS against Siliga and Agilis Systems, Inc., the state court held:

> This Court finds that LADS was not a Party in the Settlement Agreement, LADS did not execute the release, nor was LADS given any consideration under the release. Therefore, LADS did not release any claims and has a right to execute on the Warrant issues to LADS.

ECF No. 33-6.

LADS also argues that the third party complaint raises a novel and complex issue of state law: whether an individual can be sued for executing a settlement agreement that binds a corporation that is not a party to the agreement or the underlying lawsuit. Lastly, LADS argues that principles of res judicata based on the state court's decision may preclude the claims asserted by Defendants, and thus requests the Court to decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367.

Defendants reply that this copyright infringement litigation falls squarely within the terms of the Settlement Agreement executed by Huber. Thus, if Huber executed the Settlement Agreement without authorization by LADS, then "he should be held accountable for those promises and representations as part of this lawsuit." ECF No. 34 at ¶ 12. Defendants contend that, as a result, the terms of the Settlement Agreement and Huber's representations thereof are central to Defendants' defense of this case.

## DISCUSSION

"A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R.

4

Civ. P. 14. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "Rule 14 does not allow a third-party complaint to be based on a defendant's independent cause of action against a third-party defendant." *Constr. Indus. Laborers Pension Fund v. X-L Contracting, Inc.*, No. 4:13-CV-1462 NAB, 2014 WL 3805498, at *3 (E.D. Mo. Aug. 1, 2014). "A third-party complaint must be found on a third-party's actual or potential liability to the defendant for all or part of the plaintiff's claim against the defendant." *Id.*

Defendants assert that "Pursuant to 28 U.S.C. § 1367 this Court has supplemental jurisdiction over the claims asserted in the Third Party Complaint because they are so related to the claims alleged within the original action that they form part of the same case or controversy." ECF No. 27-1 at ¶ 4. 28 U.S.C. § 1367 provides, in relevant part, that

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). "Claims within the action are part of the same case or controversy if they 'derive from a common nucleus of operative fact.'" *Myers v. Richland Cnty.*, 429 F.3d 740, 746 (8th Cir. 2005) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966)). "A plaintiff's claims derive from a common nucleus of operative fact if the 'claims are such that he would ordinarily be expected to try them all in one judicial

5

proceeding.'" *OnePoint Solutions, LLC v. Borchert,* 486 F.3d 342, 350 (8th Cir. 2007) (quoting *Gibbs,* 383 U.S. at 725).

Here, there is little commonality of facts between the complaint and the third party complaint. Count I of the complaint asserts facts solely related to LADS's copyrighted software and various license agreements entered between the parties. The third party complaint does not allege that Huber is liable for some or all of the alleged copyright damages. Rather, Defendants assert claims against Huber for his alleged breach of a separate Settlement Agreement and misrepresentations made to Defendants regarding his capacity to bind LADS in waiving all claims, including copyright infringement claims, against Defendants, pursuant to the Settlement Agreement. Thus, the third party complaint is based on Defendants' contingent and "independent cause of action" against Huber.

Moreover, although there is some commonality of facts between the third party complaint and the counterclaim, the issues are very different. The counterclaim centers on the terms of the Settlement Agreement and its enforceability against LADS, whereas the third party complaint centers on the fraudulent promises and representations made by Huber to Defendants, the reasonableness of Defendants' reliance on those representations, and whether Huber directed LADS to file the instant copyright infringement action. These allegations, which sound in fraud, are quite different from the allegations contained in the counterclaim. Accordingly, the third party complaint does not form part of the same case or controversy as the original complaint and raises issues distinct from the counterclaim.

6

Moreover, even if the Court were to determine that the third party complaint forms part of the same case or controversy as the complaint, the Court may decline to exercise its supplemental jurisdiction over the third party action in one of four circumstances: (1) if the claim involves complex issues of state law; (2) state law claims predominate over federal claims; (3) all federal claims have been dismissed; or, (4) under exceptional circumstances, a compelling reason exists to decline supplemental jurisdiction. *See* 28 U.S.C. § 1367(c); *Schmucker v. Precision Irrigation, Inc.*, No. 4:15-CV-00567-JCH, 2015 WL 6438351, at *2 (E.D. Mo. Oct. 22, 2015) (citing *Innovative Home Health Care, Inc. v. P.P.–O.T. Assocs. of the Black Hills,* 141 F.3d 1284, 1287 (8th Cir. 1998)).

"[I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *JPMorgan Chase Bank, N.A. v. Gorman & Gorman Residential, Mortg. Servs., Inc.*, No. 4:08CV0489 TCM, 2008 WL 11391362, at *2 (E.D. Mo. Sept. 9, 2008) (citing *Gibbs*, 383 U.S. at 726-27); *see also City of Chicago v. International College of Surgeons*, 522 U.S. 156, 173 (1997) (holding that a district court may decline to exercise its supplemental jurisdiction over state law claims by considering a "host" of factors, "including the circumstances of the particular case, the nature of the state law claims, and the character of the governing state law, and the relationship between the state and federal claims[.]").

In the instant case, the complaint arises under federal law, having its genesis in a series of license agreements regarding Defendants' use of LADS's copyrighted software

7

and the resulting breach of those agreements. While the counterclaim arises under state law, it asserts two fairly straightforward breach of contract claims against LADS under the terms of one of those license agreements and the Settlement Agreement. Huber's legal authority to bind LADS under the Settlement Agreement will be relevant to Defendants' breach of contract counterclaim. The third party complaint, on the other hand, contains allegations of breach of the implied covenant of good faith and fair dealing and detrimental reliance, which are based on Huber's representations to Defendants, as well as Huber's intent and mental state, during settlement negotiations in an unrelated state lawsuit, to which LADS was not a party.

Upon careful consideration, the Court concludes that the state law issues raised in the third party complaint are complex and would substantially predominate this litigation, since the claims asserted—and the evidence required to prove those claims—are considerably different from those raised in the complaint and counterclaim. Moreover, Defendants have not asserted that they would be unable to pursue their claims against Huber in state court.

The Court further concludes that allowing the third party complaint to be joined in this litigation would vastly expand the scope of the issues raised and will require more of the Court's time and attention. *See Gorman & Gorman Residential, Mortg. Servs., Inc.*, 2008 WL 11391362, at *3 (holding that a third party action alleging the real estate agent intentionally created false financial records for those seeking loans required a significant quantity of evidence that would not be relevant to the bank's breach of contract suit and

would thus too greatly expand the scope of the litigation). Accordingly, the Court will decline to exercise supplemental jurisdiction over the third party complaint.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Agilis Systems, LLC and Gilead Group, LLC's motion for leave to file a third party complaint is **DENIED**. ECF No. 27.

Dated this 30th day of July, 2019.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE