UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LADS NETWORK SOLUTIONS, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:19-cv-00011-SEP |
| AGILIS SYSTEMS, LLC, et al., | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM AND ORDER**

Before the Court is Plaintiff's Motion to Reconsider Pursuant to Federal Rules of Civil Procedure 59(e) and 60(b). Doc. [149]. For the reasons set forth below, the motion is denied.

**FACTUAL BACKGROUND**

On March 12, 2014, Daniel Huber filed on Plaintiff's behalf a copyright registration application and accompanying deposit material with the United States Copyright Office for its GPStrac software. Doc. [92] (Pl.'s Resp. to Defs.' Statement of Material Facts) ¶ 1. In compiling the deposit material, Huber asked one of Plaintiff's employees to retrieve the entire GPStrac code, then, Huber claims, "the first and last 25 pages were extracted, and lines were redacted to protect trade secrets." Doc. [93] ¶ 13. On September 4, 2014, Melissa Wells Saharko, a registration specialist with the Copyright Office, responded to Huber's application, noting discrepancies between the application and the deposit material. Doc. [92] ¶ 3. Saharko explained that the application indicated that GPStrac was created on May 1, 2000, but the deposit material contained a 2004 copyright notice. *Id.* ¶ 4. In response to Saharko's correspondence, according to Huber, he asked the same LADS employee "to identify the correct set of files, which was again assembled, the first and last 25 pages extracted with lines redacted." Doc. [93] ¶ 13; *see also* Doc. [92] ¶ 6. On September 15, 2014, Huber again submitted what was purportedly the first 25 pages and last 25 pages of the relevant source code, with redactions. Doc. [92] ¶ 6. On September 16, 2014, Saharko confirmed that the registration was complete, and Plaintiff received a copyright registration for its GPStrac software the same day. *Id.* ¶¶ 7-8.

On January 3, 2019, Plaintiff filed this lawsuit alleging that the Defendants committed copyright infringement. Doc. [1]. On March 10, 2020, in response to Defendants' discovery requests, Plaintiff produced the complete and unredacted GPStrac source code: LADS000139-437-

GPStrac Copyright Full Source Code 5-1-00.PDF.  Doc. [92] ¶ 9.  Upon reviewing the complete, unredacted source code, Defendants discovered that it contained references to Apache License Version 2.0, Google Maps, InfoBubble JS, and Developer.yahoo.com/yui—third-party programs that did not exist on May 1, 2000, when the GPStrac source code was supposedly published according to the September 2014 application and registration.  *Id.* ¶¶ 8, 10-16.

On March 13, 2020, Defendants' counsel informed Plaintiff's counsel about the issue with the deposit material, and Plaintiff's counsel confirmed that the source code produced on March 10, 2020, contained software that did not exist on May 1, 2000.  *Id.* ¶ 27; *see also* Docs. [83-23] (March 13, 2020, email from Corsale to Rabenberg) (notifying Plaintiff's counsel that the source code produced on March 10th incorporates software created years after May 1, 2000); [83-22] (April 2, 2020, email from Rabenberg to Corsale) ("Your observations about the source code that were previously produced (LADS000139-437) . . . were correct.  My client selected a file for production that began with the correct source code from the correct time frame but included material that existed later in time.").  On April 2, 2020, Plaintiff provided Defendants with a different source code: LADS000438-539.[1]  Doc. [92] ¶ 26; *see also* Doc. [83-22] (April 2, 2020, email from Rabenberg to Corsale).  After the March 13th communication, Huber claims to have "realized the mistake that had been made with the deposit material for the [September 15, 2014] copyright application," Doc. [93] ¶ 16, and contacted the Copyright Office "to inquire how [he] could correct" the deposit material.  According to Huber, an unnamed employee said that "the [O]ffice would contact [him] and give [him] 30 days to correct the problem" if "[the Office] were to receive information questioning the deposit[.]"  *Id.* ¶ 17.

On April 3, 2020, Defendants moved for summary judgment, arguing that Plaintiff's September 16, 2014, copyright registration was invalid pursuant to 17 U.S.C. § 411(b).[2]  Docs. [82], [83] at 14-15.  On March 26, 2021, as required by 17 U.S.C. § 411(b)(2), the Court queried the Copyright Office as to whether that Office would have refused registering Plaintiff's September 15, 2014, application "had it known that the deposit material/source code submitted with the

---

[1] According to Defendants, the source code produced on April 2, 2020, was not the same source code submitted to the Copyright Office on September 15, 2014, which Plaintiff does not deny.  Doc. [92] ¶ 28.

[2] Section 411(b) states that "[a] certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless—(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration."

application . . . included source code created after the purported publication date of May 1, 2000[.]" Doc. [134] at 1.  On August 3, 2021, the Copyright Office responded that it would have denied registration under those circumstances.  Doc. [137] as 1 ("[I]f the Office had been aware that the deposit submitted on September 15, 2014, included source code created after the May 1, 2000 publication date provided in the application, it would not have registered the work.").

On August 23, 2021, the Court held oral argument on the motion.  Doc. [139].  In their papers and at oral argument, the parties did not dispute that the first and third requirements of § 411(b)—i.e., that inaccurate information was included in the September 15, 2014, application and that had the Office known of the inaccuracy, it would have refused registration—were met.  *See, e.g.,* Docs. [91] at 5; [93] ¶ 16; [137] at 1; [148] (Trans. of Oral Arg.) at 14:12-21.  But they disagreed about the level of knowledge required to satisfy § 411(b)(1)(A).  Plaintiff argued that fraudulent intent was necessary, Doc. [91] at 6-7, while Defendants claimed that it was not, Doc. [99] at 8-10.

On August 25, 2021, the Court granted Defendants' motion on the oral record.  Docs. [141], [142].  After acknowledging that the legal question was unsettled in the Eighth Circuit, the Court followed *Bruhn NewTech, Inc. v. United States*, 144 Fed. Cl. 755, 802 (2019), in holding that, by its terms, § 411(b)(1)(A) does not require fraudulent intent.  Doc. [147] at 5:8-20.  Then the Court found that Defendants had shown an absence of genuine dispute that Plaintiff knew[3] information redacted from the September 15, 2014, application was inaccurate when it was submitted, *id.* at 6:6-

---

[3] The Court found that it was "undisputed . . . that someone at LADS reviewed the inaccurate information, not once, but twice before submitting it; that that person was charged with determining whether the contents of the code contained trade secrets, and determined that the sections that contained inaccurate information did contain trade secrets. So whoever it was who made those redactions . . . they knew enough about coding to know whether these things were trade secrets or not." Doc. [147] at 7:6-11.  The Court also found that after the Copyright Office notified Plaintiff about the discrepancy between the application and the deposit material, a LADS employee "had to re-review [Plaintiff's] submission *for information post-dating 2000*, and they resubmitted it, and . . . this information that postdated 2000 was still redacted as a trade secret.  So it is undisputed that someone at LADS reviewed the inaccurate information before submitting it, carefully enough to determine that it should be redacted, and I think that is sufficient to satisfy the standard under *Bruhn NewTech* for knowledge that the information . . . in the application was inaccurate. " *Id.* at 8:1-4 (emphasis added); *see Bruhn NewTech*, 144 Fed. Cl. at 815 ("An applicant for a copyright registrant will have knowledge of inaccurate information in a copyright application when the applicant is 'aware' of the facts underlying the inaccuracy.") (citing *Palmer/Kane LLC v. Rosen Book Works LLC*, 188 F. Supp. 3d 347, 352 (S.D.N.Y. 2016)("While plaintiff objects that there is no evidence that plaintiff <u>knew</u> the information was inaccurate, plaintiff's 30(b)(6) witness testified that the works had been published by the time the May 18, 2001 application had been filed, which plaintiff surely would have known at the time as well.")).

3

8:13, and that Plaintiff had failed to adduce sufficient evidence to generate a genuine dispute of fact on that issue, *id.* at 8:14-9:12.[4] A written judgment followed on August 31, 2021. Doc. [145].

On September 28, 2021, Plaintiff moved under Federal Rules of Civil Procedure 59(e) and 60(b) that the Court vacate its earlier grant of summary judgment on the basis of "newly discovered evidence." Doc. [149]. That evidence includes a Copyright Office response to Plaintiff's September 1, 2021, copyright registration application, and the Office's decision granting Plaintiff's September 14, 2021, supplemental registration application. Docs. [149-1] at 2; [149-2] (Huber's Sept. 27, 2021, Decl.) ¶¶ 4, 7-11.[5] According to Plaintiff, the September 1, 2021, application was "Mr. Huber's attempt to register the portion of the code necessary to LADS's claim for copyright infringement." Doc. [149-1] at 2. The Copyright Office rejected the September 1st application because the work was "previously registered." *Id.* The September 14th application was a supplemental registration in which Plaintiff purported to "disclaim[] the portion of the previously submitted deposit material that had been mistakenly included."[6] *Id.* Plaintiff contends that the two facts—the Office's response to the September 1st application and the issuance of the registration for the September 14th application—show that the Copyright Office recognized that the "original [i.e., the September 16, 2014] registration remained in place," and that the September 14, 2021, supplemental registration repaired the September 16, 2014, registration and made it enforceable. *Id.* at 3, 4-5.

### LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). "A district court has broad discretion in determining whether to grant or deny a motion to alter or amend judgment pursuant to Rule 59(e)." *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930,

---

[4] The Court rejected Huber's own declaration as counterevidence that Plaintiff knew of the inaccuracies because it was a self-serving affidavit unsupported by any other evidence and it did not even deny that either Huber or the LADS employee he had deputized to collect the deposit material knew that information in the deposit was inaccurate. Doc. [147] at 8:14-9:12.

[5] Defendants move to strike the portions of Huber's declaration describing his communications with the Copyright Office as inadmissible hearsay. *See* Doc. [151]. Although the Court considers some of the contents of those paragraphs below for the sake of argument, its ruling does not rest on any of the objected-to portions of Huber's declaration. Therefore, the motion to strike is denied as moot.

[6] Curiously, at the August 23, 2021, oral argument, which took place a little over a month before the filing of the instant motion, Plaintiff's counsel represented that a supplemental registration *cannot* be used to remedy a deposit defect. *See* Doc. [148] at 7:19-8:2 (stating that there is a "thing called a supplemental registration," and that "there's a list of things you can correct with that, and there's a list of things that you cannot." "The—one of the things you cannot is correct a deposit. So you can't do a supplemental registration.").

933 (8th Cir. 2006) (citing *Innovative Home health Care v. P. T.-O. T. Assoc. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1988)). "It should be noted that Rule 59(e) motions serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence." *Id.* (quoting *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988)) (internal quotation marks omitted). "To prevail on a Rule 59(e) motion, the movant must show that (1) the evidence was discovered after trial; (2) the movant exercised due diligence to discover the evidence before the end of trial; (3) the evidence is material and not merely cumulative or impeaching; and (4) a new trial considering the evidence would probably produce a different result." *Id.* (citing *U.S. Xpress Enter. Inc. v. J.B. Hunt Transp., Inc.*, 320 F.3d 809, 815 (8th Cir. 2003)). "Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *Id.* (quoting *Hagerman*, 839 F.2d at 414); *see also* 11 Wright & Miller, *Federal Practice & Procedure* § 2810.1 ("The Rule 59(e) motion may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.") (footnotes omitted).

Federal Rule of Civil Procedure 60(b) allows a court to "relieve a party . . . from a final judgment, order or proceeding . . ." for the following reasons: (1) "mistake, inadvertence, surprise, or excusable neglect"; (2) "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)"; (3) "fraud . . ., misrepresentation, or misconduct by an opposing party"; (4) "the judgment is void"; and (5) "the judgment has been satisfied, released, or discharged; [was] based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable"; or (6) "any other reason that justifies relief." Fed. R. Civ. P. 60(b). "Relief under Rule 60(b) is limited. A district court should grant a Rule 60(b) motion only upon an adequate showing of exceptional circumstances." *Mecey v. City of Farmington*, 2021 WL 38018, at *2 (E.D. Mo. Jan. 5, 2021) (citing *Schwieger v. Farm Bureau Ins. Co. of Neb.*, 207 F.3d 480, 487 (8th Cir. 2000)). "A Rule 60(b) motion is not for the purpose of rearguing, more fully, the merits of a claim." *Id.* (citing *Broadway v. Norris*, 193 F.3d 987, 990 (8th Cir. 1999)). "Rule 60(b) motions are viewed with disfavor and are addressed to the Court's discretion." *Id.* (citing *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 515 (8th Cir. 1984)).

5

## DISCUSSION

I. **The Copyright Office's response to the September 1, 2021, registration application and decision issuing a registration certificate for the September 14, 2021, supplemental registration application are not newly discovered facts supporting reconsideration.**

Defendants argue that Plaintiff's "newly discovered facts" do not provide a basis for reconsidering the prior grant of summary judgment. Doc. [153] at 5. Defendants rely on *Alicea v. Machete Music*, 744 F.3d 773 (1st Cir. 2014), wherein plaintiffs lost an infringement action at summary judgment because they failed to prove they held valid copyright registrations. Doc. [153] at 5. After judgment was issued, plaintiffs moved under Rule 59(e), "claiming 'new evidence'" in the form of new copyright registration certificates issued post-judgment. *Alicea*, 744 F.3d at 778. The First Circuit upheld the district court's denial of plaintiffs' motion. Under the "registration approach"[7] to copyright registration, the First Circuit stated that "the[] registrations are new facts altogether, not new evidence of facts existing *at the time of summary judgment*." *Id.* at 782 (citing 11 Wright & Miller, *Federal Practice & Procedure* § 2808 (3d ed.)). Moreover, the First Circuit held, even if the "application approach"[8] applied, while "the subsequent registrations might be taken as proof that the plaintiffs had submitted complete applications . . . [at] the time of summary judgment," "plaintiffs ha[d] not shown that they were excusably ignorant of the fact that their applications were complete at the time of summary judgment, or that due diligence . . . would not have uncovered this fact." *Id.*

Here, Plaintiff filed the September 1st and 14th copyright applications *after* the Court issued judgment. Thus, the Copyright Office's response to the September 1st application and the issuance of the certificate for the September 14th application cannot be "new evidence of facts existing *at the time of summary judgment*," *Alicea*, 744 F.3d at 782, of which Plaintiff might claim to have been excusably ignorant. Plaintiff simply did not attempt to remedy the defect in its registration until

---

[7] The registration approach treats the registration requirement as satisfied "at the time that the Office acts on the application and issues a certificate of registration[.]" *Alicea*, 744 F.3d at 779.

[8] The application approach recognizes that "the registration requirement is satisfied at the time the copyright holder's application is received by the Copyright Office." *Alicea*, 744 F.3d at 779. The "application approach" has since been rejected by the Supreme Court in *Fourth Estate Public. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 888 (2019) ("Fourth Estate advances the former view—the 'application approach'— while Wall-Street urges the latter reading—the 'registration approach.' The registration approach, we conclude, reflects the only satisfactory reading of § 411(a)'s text. We therefore reject Fourth Estate's application approach.").

after the Court had ruled on summary judgment, and so its alleged remediation, if effective, is a fact that came into existence after the Court had so ruled.

If, as Plaintiff urges, the Court were to regard its post-summary-judgment communications with the Copyright Office as evidence not of any new factual development but of the fact that the 2014 registration is and has always been in effect, notwithstanding the Copyright Office's response to this Court's § 411(b) inquiry, that would not save Plaintiff's Motion for Reconsideration. On that interpretation, the communications are evidence that Plaintiff could just as easily have adduced before the Court's ruling on summary judgment, and the Court cannot countenance them for that reason. *See Hagerman v. Yukon Energy Corp.*, 839 F.3d 407, 414 (8th Cir. 1988) (quoting *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir.), *as amended*, 835 F.2d 710 (7th Cir. 1987)) (motions for reconsideration "cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during the pendency of the summary judgment motion").

To excuse the tardiness of the evidence, Plaintiff relies upon Huber's May 1, 2020, declaration, in which Huber testified that in response to correspondence from Defendants' counsel on March 13, 2020, he "contacted the Copyright Office to inquire if and how [he] could correct the deposit material[.]" Doc. [93] ¶ 17 (cited by Doc. [155] at 2-3). Huber states that the person who took his call told him that "if [the Copyright Office] were to receive information questioning the deposit, the [O]ffice would contact [Huber] and give [him] 30 days to correct the problem." *Id.* Apparently, based on that statement, Plaintiff believed that it *could not* fix the deposit material *unless* another party complained to the Copyright Office, because Plaintiff cites the fact that "that never happened" as its excuse for failing to make the correction before the Court's § 411(b) inquiry and the resulting summary judgment ruling. *See* Doc. [155] at 3.

There are several problems with that excuse. First, to the extent Plaintiff is relying on Huber's declaration as evidence that Plaintiff could not have fixed the deposit without some sort of precipitating inquiry from a third party, Huber's account of the statement of a Copyright Office employee appears to be inadmissible hearsay. *See* Fed. R. Civ. P. 56(c)(4); Fed. R. Evid. 801(c), 802. Plaintiff points to no admissible evidence that there was any impediment to rectifying the defects in its application at least as early as March 13, 2020, when it admits to having been aware of them.

As evidence that Plaintiff was under the impression that it could not rectify the defects sooner, Huber's account of his conversation with the Copyright Office is a slender reed. It is by no means obvious that the statement "if someone questions the deposit, you will have 30 days to fix the

7

problem," means "you may *not* fix the problem *unless* someone questions it." Those two statements are not synonymous, as Plaintiff implicitly asks this Court to accept.

Moreover, given the circumstances of the inquiry, Mr. Huber's interpretation of the employee's supposed response strains credulity. The defects in the deposit material were in redacted portions. Therefore, no third party could have identified the deposit's defects, absent an exceptional circumstance like litigation (hence its discovery by Defendants). While the public may inspect deposit materials, *see* 17 U.S.C. § 705(b), the inaccuracies in the redacted portions of the deposit material appended to Plaintiff's September 15, 2014, copyright application would not have been any more apparent to the public than they had been to the Copyright Office itself. *Cf.* Doc. [148] at 6:20-7:16 (Plaintiff's counsel concedes that redacting the inaccuracies prevented the Copyright Office from detecting them). Thus, Mr. Huber's claim is that when he called and told the Copyright Office that there was a significant problem with *redacted* deposit material that was the basis for his copyright registration, he understood the Copyright Office employee to be telling him that Plaintiff *could not* fix that problem unless a third party complained about it, even though that was highly unlikely ever to happen. As an interpretation of the statement, "if someone questions the deposit, you'll have 30 days to fix the problem," that is, at best, implausible.

Yet another problem with Plaintiff's claim that it was just waiting for someone to inquire is the fact that the Copyright Office *did* receive an inquiry about Plaintiff's source code deposit *from this Court* in the course of *this litigation*, and Plaintiff *still* did not seek to rectify the problem. The Court sent an inquiry to the Copyright Office in response to Defendant's motion under § 411(b) on March 26, 2021. *See* Doc. [134]. Plaintiff was undeniably aware of that inquiry, which does seem to meet the description of "[the Copyright Office] . . . receiv[ing] information questioning the deposit." Doc. [93] ¶ 17. If Huber genuinely believed that such an inquiry was the trigger that would enable Plaintiff to fix its defective deposit, one might have expected Plaintiff to reach out to the Copyright Office seeking to do just that. Yet, Plaintiff did not do that—not immediately, and not within 30 days. Instead, Plaintiff waited five months—until *after* the Copyright Office went to the trouble of responding to that inquiry *and* this Court held oral argument *and* ruled on the long-pending motion for summary judgment on these precise grounds—before taking any action. That delay is inconsistent with Plaintiff's claim that it was just waiting for the Copyright Office "to receive information questioning the deposit." Doc. [93] ¶ 17.

In any event, a motion for reconsideration is not a proper vehicle for arguments that could have been presented to the Court prior to its summary judgment ruling. *Hagerman*, 839 F.2d at 414.

Assuming everything Plaintiff is currently arguing is true—i.e., that the supplemental registration is dispositive proof that Plaintiff's 2014 registration is still in effect after excision of the offending deposit material[9]—it appears to be an argument that Plaintiff could have made and substantiated in precisely the same fashion at any time between the discovery of the defects in March 2020 and this Court's ruling in August 2021. Therefore, it is not a proper basis for reconsideration of that ruling.

Finally, even if Plaintiff had received a supplemental registration before this Court granted summary judgment, that would not have changed the Court's ruling. Section 411(a) provides that "no civil action for infringement of the copyright in any United States work *shall be instituted until* preregistration or registration of the copyright *has been made* in accordance with this title." 17 U.S.C. § 411(a) (emphasis added). The Supreme Court has counseled that "registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights." *Fourth Est. Pub. Benefit Corp.*, 139 S. Ct. 881, 887 (2019).

Assuming that the registration certificate issued in response to Plaintiff's September 14, 2021, supplemental application is valid, that certificate bears an "Effective Date of Registration" of September 14, 2021. The lawsuit Plaintiff seeks to reopen was "instituted" on January 3, 2019. Therefore, the supplemental registration does not prove that "registration of the copyright" had been "made in accordance with this title" *before* institution of this lawsuit. 17 U.S.C. § 411(a); *see also* § 17 U.S.C. § 411(b); Doc. [147] at 6:1-5, 10:1-7.[10] Because Plaintiff had not satisfied the exhaustion requirement of § 411(a) at the time this lawsuit was instituted, the Court will not consider reopening *this* lawsuit, even if Plaintiff has since cured its failure to exhaust. *Fourth Est. Pub. Benefit Corp.*, 139 S. Ct. at 887; *see also Brooks-Ngwenya v. Thompson*, 202 F. App'x 125, 127 (7th Cir. 2006) ("Satisfaction of the condition while the suit is pending does not avoid the need to start anew."); *Rawls v. Paradise Artists, Inc.*, 2020 WL 1493610, at *5 (M.D. Tenn. Mar. 27, 2020) (collecting post-*Fourth Estate* district court cases holding that post-filing copyright registration does not cure failure to exhaust).

---

[9] Defendants reject the substance of the claim as well as its timeliness, *see* Doc. [153] at 5-9, but the Court does not reach the substance due to its conclusion that the argument is not properly raised in a motion for reconsideration.

[10] Plaintiff's position that a copyright claimant might satisfy § 411(a) by repairing a registration certificate that fails under § 411(b) after suit has been instituted is not only inconsistent with the statute's plain text; it would also render both § 411(a)'s registration requirement and § 411(b)'s safe-harbor exceptions meaningless. *Cf. Fourth Est. Pub. Benefit Corp.*, 139 S. Ct. at 889 (rejecting the application approach as satisfying §411(a)'s registration requirement because it would render part of the statute superfluous).

**II.     *Unicolors* provides no basis for reconsidering the Court's judgment.**

On April 25, 2022, Plaintiff filed a supplemental memorandum in support of its motion for reconsideration. Doc. [173]. Plaintiff argued that the Supreme Court's decision in *Unicolors, Inc. v. H&M Hennes & Mauritz L. P.*, 142 S. Ct. 941 (2022), supports its position that knowledge for purposes of § 411(b) requires "<u>actual</u> knowledge of the inaccuracy [in a copyright application], along with <u>actual</u> knowledge of the ramifications of the inaccuracy." Doc. [173] at 2. Thus, according to Plaintiff, "[a] showing of intent to defraud the Copyright Office would satisfy this requirement," but "an inadvertent, unintended mistake would not." *Id.* at 2.

Defendants disagree with Plaintiff's characterization of *Unicolors*. Doc. [174] at 1. They claim that the Supreme Court "seemingly resolved the limited issue of whether a copyright claimant is charged with actual knowledge of the law in the context of § 411(b)(1)(A)." *Id.* at 2. The Ninth Circuit's decision, which was overturned by the Supreme Court, "found that a mistake of law . . . does not matter as the statute only excused mistakes of fact." *Id.* The Supreme Court clarified that mistakes of fact *and law* are both covered by § 411(b)'s safe harbor. *Id.*

On review of *Unicolors*, the Court agrees with Defendants. In that case, the Supreme Court considered whether mistakes of law are covered by § 411(b)'s safe harbor. The Ninth Circuit had held that mistakes of law are excluded from § 411(b) protection. *Unicolors*, 142 S. Ct. at 945. After reviewing the statutory text and other provisions of the Copyright Act, the Court concluded that § 411(b)'s safe harbor was not limited to factual inaccuracies. *Id.* at 946-47. Rather, mistakes of law knowingly included in a copyright registration application can also render a subsequently issued registration unenforceable. *Id.* at 948.

Of relevance here: The Supreme Court acknowledged in *Unicolors* that it was *not* deciding whether invalidation under § 411(b) required a showing of fraudulent intent. *Id.* at 949; *see also id.* at 949-50 (Thomas, J., dissenting) (recommending dismissal of the writ of certiorari as improvidently granted because Unicolors abandoned the question presented: "whether § 411(b)(1)(A)'s 'knowledge' element require[d] 'indicia of fraud.'"). And the Court specifically rejected the notion that its holding would make it easy for copyright holders to invoke the protection of § 411(b), because a finding of knowledge does not require a smoking gun:

> [C]ourts need not automatically accept a copyright holder's claim that it was unaware of the relevant legal requirements of copyright law. We have recognized in civil cases that willful blindness may support a finding of actual knowledge. Circumstantial evidence, including the significance of the legal error, the complexity of the relevant rule, the applicant's experience with copyright law, and other such matters, may also

10

> lead a court to find that an applicant was actually aware of, or willfully blind to, legally inaccurate information.

*Unicolors*, 142 S.Ct. at 948 (internal citations omitted). Thus, nothing in *Unicolors* necessitates a different decision on Defendants' April 3, 2020, motion for summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reconsider Pursuant to Fed. R. Civ. P. 59(e) and 60(b), Doc. [149], is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Portions of the Declaration of Daniel Huber, Doc. [151], is **DENIED** as moot.

Dated this 28th day of September, 2022.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE